# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LARRY ROMERIC BERNARD (#108810)**　　　　　　　　**CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL.**　　　　　　　　　　　　　　　　**NO. 16-12-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 6, 2016.

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　**RICHARD L. BOURGEOIS, JR.**
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**LARRY ROMERIC BERNARD (#108810)**          CIVIL ACTION

**VERSUS**

**BURL CAIN, ET AL.**                        NO. 16-12-JWD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against former Warden N. Burl Cain, Asst. Warden Ray Vittorio, Sgt. Irvin Green and Cadet Wanda Young complaining that his constitutional rights have been violated due to the defendants' failure to protect him from harm, retaliation, and in connection with a disciplinary proceeding. He prays for monetary relief.

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action or claim brought by a prisoner who is proceeding *in forma pauperis* or is asserting a claim against a governmental entity or an officer or employee of a governmental entity if satisfied that the action or claim is frivolous, malicious or fails to state a claim upon which relief may be granted. An action or claim is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hicks v. Garner*, 69 F.3d 22, 24-25 (5th Cir. 1995).

A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Id*. at 32-33. A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). The law accords judges not only the authority to dismiss a claim

which is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations. *Denton v. Hernandez*, *supra*, 504 U.S. at 32. Pleaded facts which are merely improbable or strange, however, are not frivolous for purposes of § 1915. *Id*. at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). A § 1915 dismissal may be made any time, before or after service or process and before or after an answer is filed, if the court determines that the allegation of poverty is untrue; or the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2) and *Green v. McKaskle*, 788 F.2d 1116, 1999 (5th Cir. 1986).

  The plaintiff alleges the following in his Complaint: On May 22, 2015, offender Julian Manning lied to defendant Cadet Young by telling her he lived in cell #2, which was the plaintiff's cell. Believing offender Manning, defendant Young opened the plaintiff's cell and offender Manning then entered the cell and attacked the plaintiff with an ink pen. Defendant Sgt. Green was present when offender Manning lied to defendant Young, but failed to protect the plaintiff whose full name and DOC number was tagged above his cell door and whose photo ID, also bearing his DOC number, hung a few inches next to the pen box that controls the cell doors. Following the incident, Defendant Green issued the plaintiff a false disciplinary report for aggravated fighting. Had defendant Green assisted defendant Young, and had defendant Asst. Warden Vittorio properly trained defendants Green and Young, the incident would not have occurred.

  Following a disciplinary hearing, the plaintiff was sentenced to Camp J extended lock down and ordered to pay $83.00 as restitution. The plaintiff thereafter filed an ARP regarding the disciplinary charge, and the ARP was denied by defendant former Warden Burl Cain. In retaliation for the plaintiff filing an ARP, defendant Cain allowed an unidentified "staffer" to charge offender Manning with a lesser charge resulting in offender Manning being released from extended lockdown and returned to his original housing area.

First, the plaintiff has named the defendants herein in both their individual and their official capacities. As to any claims the plaintiff is asserting against the defendants in their official capacities, section 1983 does not provide a federal forum for a litigant who seeks the recovery of monetary damages against state officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief, whether in the form of damages or prospective injunctive relief.

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, prison officials have a duty to protect inmates from harm or violence by other inmates. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994); *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 650. "To establish a failure-to-protect claim, an inmate must show that he was 'incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Pogue v. Bello,* 275 F.3d 1079, 2001 WL 1467095, at *1 (5th Cir. Oct. 25, 2001) (quoting *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir. 1995)). Here, while plaintiff may allege that he was exposed to harm by acts or omissions on the part of defendants Young and Green in failing

to protect him from an attack by inmate Manning, he fails to state a claim cognizable as a matter of law under Section 1983.

A convicted prisoner or pretrial detainee may succeed on a claim for damages under 42 U.S.C. § 1983 for failure to protect from harm only if he demonstrates that there has been "deliberate indifference" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain ... or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Constitution.  *Estelle v. Gamble,* 429 U.S. 97, 105–06 (1976); *accord Gregg v. Georgia,* 428 U.S. 153, 182–83 (1976); *Hare,* 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  *Farmer,* 511 U.S. at 847.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Constitution by failing to protect him from attack by another inmate.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  *Id.* at 834 (quotation omitted). Thus, plaintiff must show that a risk of serious harm existed from another inmate to satisfy this prong.  *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Rhem v. Marion County Sheriff Dep't,* 263 F.3d 164, 2001 WL 803853, at *1 (5th Cir. June 14, 2001).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. *Farmer,* 511 U.S. at 838 (citing *Wilson,* 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 834, 837; *accord Newton v. Black,* 133 F .3d 301, 308 (5th Cir.1998).  "Mere negligence or a failure to act reasonably is not enough.

The officer must have the subjective intent to cause harm." *Mace v. City of Palestine,* 333 F.3d 621, 626 (5th Cir.2003).

In the present matter, the plaintiff has not alleged any facts which would tend to show deliberate indifference on the parts of defendants Young or Green. At best, the plaintiff's allegations against defendants Young and Green amount to a claim for negligence. (See Complaint, R. Doc. 1 at 6) (alleging that the incident at issue occurred "as a result of Cdt. Young's negligence").

The plaintiff has also failed to allege the prerequisites for supervisory liability with regards to defendant Vittorio. In this circuit, "[t]o succeed on a failure to train claim, a plaintiff must show that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of ... [a] plaintiffs rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). The plaintiff merely alleges in a conclusory fashion that, "…Vittorio, failed to do his duty as required to properly train or assist defendant(s) Young and Sgt. Green to work (CCR Unit) for serious offenders…" As such, the Complaint fails to set forth a claim for supervisory liability on the part of defendant Vittorio.

Turning to the plaintiff's due process claims, a claim regarding the issuance of a false disciplinary report, without more, fails to state a claim of federal constitutional dimension cognizable under 42 U.S.C. § 1983. Specifically, the law is clear that the mere issuance of one or more false disciplinary reports and the imposition of resulting punishment does not alone amount to a constitutional violation. *See Grant v. Thomas*, 37 F.3d 632 (5th Cir. 1994), *citing Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984) ("[T]here is no due process violation if a prisoner, who is falsely accused of charges, is given an adequate state procedural remedy to challenge the accusations"). Accordingly, this claim is also subject to dismissal.

To the extent the plaintiff is complaining of a violation of his due process rights in connection with the disciplinary proceedings, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved. *Mahogany v. Miller,* 252 F.App'x. 593, 595 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless. *Id.* at 373-74.

This conclusion is equally applicable in the context of prison disciplinary proceedings. *See, e.g., Sanchez v. Grounds,* 2014 WL 1049164, *2 (E.D. Tex. Mar. 14, 2014) (finding that an inmate's claim regarding a failure to conduct a "proper investigation" of a disciplinary charge "did not amount to a constitutional deprivation"); and *Jackson v. Mizell,* 2009 WL 1792774, *7 n.11 (E.D. La. June 23, 2009) (noting that "the Court fails to see how a prisoner could ever state a cognizable claim alleging an inadequate disciplinary investigation").

Further, the failure of prison officials to follow prison rules or regulations does not amount to a violation of the plaintiff's constitutional rights. *Jackson v. Cain*, 864 F.3d 1235, 1252 (5th Cir. 1989). Nor does this Court sit as some form of an appellate court to review errors made by state tribunals that do not affect an inmate's constitutional rights. *See, e.g., Coleman v. Director, TDCJ-CID,* 2009 WL 56947, *2 (E.D. Tex. Jan. 7, 2009) (noting, in the context of an inmate's habeas corpus proceeding arising out of a prison disciplinary proceeding, that "[i]n the course of reviewing state proceedings, a federal court does not sit as a super state appellate court.").

Moreover, in *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court noted that in some rare situations, an inmate may be entitled to procedural Due Process when state action exceeds the sentence in such an unexpected way as to give rise to protection by the Due Process Clause of its own force.  Normally, however, the Due Process Clause, itself, does not afford an inmate a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974).  It is only those restrictions that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" that will invoke the prospect of state-created liberty interests.  *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

Thus, while *Sandin* made it clear that punishments that impact upon the duration of confinement, or which exceed the sentence in an unexpected manner, or that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" will give rise to the protection afforded by the Due Process Clause, more routine disciplinary action will not invoke this constitutional protection.  *Sandin,* 515 U.S. at 484.  In the instant case, the plaintiff was sentenced to a custody status change.  This punishment does not amount to disciplinary action that infringes upon a constitutionally protected liberty interest which would invoke the protection of the Due Process Clause of the Fourteenth Amendment.  *See Dickerson v. Cain,* 241 F.App'x. 193 (5th Cir. 2007) (holding that the plaintiff failed to show that placement in Camp J at LSP presents "an atypical or significant hardship beyond the ordinary incidents of prison life").  The plaintiff's claim here likewise fails to make such a showing.

With regards to the plaintiff's claim of retaliation, prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts, or for complaining through proper channels about a guard's misconduct.  *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse

act that occurs in penal institutions. *Woods,* 60 F.3d at 1166. To prevail on a claim of retaliation, a prisoner must establish four elements: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and, (4) causation. *Morris,* 449 F.3d at 684; *Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999).

If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law. *Tighe v. Wall,* 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods,* 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones,* 188 F.3d at 325; *Johnson v. Rodriguez,* 110 F.3d 299,310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the defendant's part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods,* 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *Johnson,* 110 F.3d at 310; *Woods,* 60 F.3d at 1166.

In addition, the complained-of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *Morris,* 449 F.3d at 684–85; *Hart,* 343 F.3d at 764. The purpose of allowing inmates retaliation claims under 42 U.S.C. § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. *Morris,* 449 F.3d at 686 (citing *Crawford–El v. Britton,* 523 U.S. 574, 588 n. 10, (1998)). Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris,* 449 F.3d at 686. *De minimis* acts that would not deter an ordinary person from further exercise of his rights do not rise to the level of constitutional violations and

cannot form the basis of a § 1983 claim. *Id.* Thus, an inmate's job transfer from the commissary to the kitchen was *de minimis,* while his transfer to a more dangerous prison was not. *Id.* at 687; *see also Bibbs v. Early,* 541 F.3d 267, 271–72 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours during each of four consecutive nights was more than *de minimis*). Adverse acts that cause an inmate only a "few days of discomfort," impose "a [single] minor sanction," or impose an otherwise constitutional restriction on the inmate would be *de minimis* acts. *Id.* at 685–86.

In the instant matter, the plaintiff's allegations amount to nothing more than his personal belief that he is the victim of retaliation. The plaintiff has not alleged the existence of direct evidence of motivation or alleged a chronology of events from which retaliation may plausibly be inferred. Nor do the plaintiff's allegations show that "but for" some retaliatory motive, the complained of adverse action (the transfer of offender Manning from extended lockdown while the plaintiff remained housed in Camp J) would not have occurred. Finally, Plaintiff does not allege that any adverse action was taken against him following his filing of the ARP, only that another offender was given some beneficial treatment through reclassification.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over any potential state law claims, and that this action be dismissed, with prejudice, as legally frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A.[1]

Signed in Baton Rouge, Louisiana, on October 6, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] The plaintiff is advised that 28 U.S.C. § 1915(g) provides that, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [Proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."